UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| LAQUISHA JACKSON | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Cause No. 3:17-CV-934-RLM-MGG |
| ST. PAUL'S RETIREMENT COMMUNITY, | ) | |
| Defendant. | ) | |

OPINION AND ORDER

On May 4, 2017 LaQuisha Jackson's employment as a Dining Room Manager at St. Paul's Retirement Community was terminated. Ms. Jackson, *pro se*, now sues St. Paul's Retirement Community and, in a separate action (3:17-CV-931), Unidine Corporation, for violations of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5), for alleged employment discrimination because of Ms. Jackson's race and sex. Ms. Jackson also alleges that she suffered a hostile work environment and that St. Paul's Retirement Community wrongfully terminated her. St. Paul's Retirement Community moves for summary judgment with respect to all claims. For the reasons stated below, the court grants St. Paul's Retirement Community's motion for summary judgment.

I. BACKGROUND

Ms. Jackson began her employment with Trinity Health Corporation, operator of St. Paul's Retirement Community sometime between 2002 and 2003. She

worked in various capacities, including as a dining room server. In March 2016 Ms. Jackson left St. Paul's for a position with Unidine Corporation as dining room manager. Unidine is a provider of dining related services and provided such services at St. Paul's Retirement Community. When Ms. Jackson left St. Paul's for Unidine, her employment status with St. Paul's was moved to "contingent." While Ms. Jackson worked on the premises of St. Paul's, Unidine was responsible for her supervision and salary, her bosses were all Unidine employees, and Unidine had sole control over her hiring, discipline, and termination.

On April 15, 2017 Ms. Jackson was subjected to a sexual innuendo made by St. Paul's employee Samuel "Keith" Johnson. She reported the comment to her supervisor two days later. Since the situation involved both a Unidine employee (Ms. Jackson) and a St. Paul's employee (Keith Johnson), the two organizations conducted a joint investigation. Ms. Jackson and Mr. Johnson were both sent home during the investigation. Unidine and St. Paul's interviewed Ms. Jackson, Mr. Johnson, and other witnesses. Residents who had interacted with both Ms. Jackson and Mr. Johnson were also interviewed.

The joint investigation revealed that as Ms. Jackson bent down to pick up a piece of paper that she had thrown at Mr. Johnson, Mr. Johnson asked if Ms. Jackson could "help him while [she] was down there". Ms. Jackson reportedly responded to Mr. Johnson's comment by stating "that is how I got eight kids."[1] According to Ms. Jackson, this was the first time that Keith Johnson had made

---

[1] This statement is denied by Ms. Jackson in Exhibit 8 of her response to St. Paul's Retirement Community's motion for summary judgment.

any sexually inappropriate comment towards her. Unidine and St. Paul's decided that both Ms. Jackson and Mr. Johnson bore responsibility for the situation and both were counseled about their inappropriate interaction and told to return to work.

Ms. Jackson refused to return despite repeated attempts by Unidine to bring her back. Ms. Jackson claimed that she didn't feel safe at work. Two weeks later, while she was still refusing to come to work, Unidine replaced Ms. Jackson and terminated her employment. Ms. Jackson filed separate charges of discrimination with the Equal Employment Opportunity Commission in May 2017. In October 2017 the EEOC dismissed Ms. Jackson's charges of discrimination. Ms. Jackson then sued St. Paul's Retirement Community (and Unidine Corporation in a concurrent action) alleging violations of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5). These allegations include claims of sex and race discrimination a hostile work environment, and retaliation.

Discovery disputes arose soon after Ms. Jackson filed suit. Ms. Jackson didn't initially turn over any requested documents or give responsive answers to written interrogatories. St. Paul's tried repeatedly to remedy the deficiencies in Ms. Jackson's discovery but often struggled to receive timely responses from Ms. Jackson. Ms. Jackson has also refused to sit for a deposition and has refused St. Paul's requests to sit in on a deposition scheduled with Unidine Corporation. Ms. Jackson has said that she is willing to sit for a deposition during a time that works for her schedule. The court views all alleged facts and reasonable

inferences in the light most favorable to Ms. Jackson and will address each of her claims in turn.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact." Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011). When no genuine issue of material fact exists, "the movant is entitled to judgment as a matter of law." Dunkin v. Appriss, Inc., 266 F. Supp. 3d 1103, 1106 (N.D. Ind. July 18, 2017). The movant has the burden of demonstrating to the court the basis for its motion that there exists no genuine issue of material fact. Celotex Corp v. Catrett, 477 U.S. 317, 323 (1986). In demonstrating this burden, the evidence must be viewed in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). When the movant has met its burden, the opposing party can't rely solely on the allegations in their pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." Marr v. Bank of America, N.A., 662 F.3d 963, 966 (7th Cir. 2011); see also Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")). The non-moving party can't rely on conclusory

4

allegations. Smith v. Shawnee Library System, 60 F.3d 317, 320 (7th Cir. 1995). Failure to prove an essential element of the alleged activity will render other facts immaterial. Celotex v. Catrett, 477 U.S. at 323; Filippo v. Lee Publications, Inc., 485 F.Supp.2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing a genuine issue for trial.").

III. Discussion

Ms. Jackson argues that St. Paul's Retirement Community violated Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e-5). She alleges she experienced sex and race discrimination while employed at St. Paul's, that she was subject to a hostile work environment, and that her termination was retaliatory. St. Paul's argues that it wasn't Ms. Jackson's employer at the time of alleged discrimination, that no evidence of alleged discrimination exists, and that Ms. Jackson hasn't provided adequate evidence to support her alleged damages. St. Paul's also argues that, due to Ms. Jackson's discovery non-compliance, the court should dismiss the case for failure to prosecute under Fed. R. Civ. P. 41(b) or 37(d).

*A. Employer-Employee Relationship*

To succeed on a sex or race discrimination claim against St. Paul's retirement community, Ms. Jackson must first establish, among other things, that St. Paul's

5

was her employer at the time of the alleged harassment. Love v. JP Cullen & Sons, Inc., 779 F. 3d 697, 701 (7th Cir. 2015) ("[i]n order to bring a Title VII claim against [defendant], [plaintiff] must prove the existence of an employer-employee relationship."). One cannot hold an entity other than their employer liable for a Title VII claim. Love v. JP Cullen & Sons, Inc., 779 F. 3d at 701. The record shows that Unidine Corporation was Ms. Jackson's actual employer at the time of the alleged discrimination. Unidine was responsible for Ms. Jackson's hiring, termination, evaluation, assignments, wages, workhours, benefits, supervision, and training.

Ms. Jackson worked as a Unidine employee in the dining room of St. Paul's Retirement Community and her employment status with St. Paul's was listed in their records as "contingent." A question therefore remains whether, even though Unidine Corporation was Ms. Jackson's actual employer, St. Paul's was her constructive, de facto, or indirect employer. See Tamayo v. Blagojevich, 526 F.3d 1074, 1088 (7th Cir. 2008); EEOC v. Illinois, 69 F.3d 167, 169 (7th Cir. 1995).

A number of factors go into assessment of whether St. Paul's constructively employed Ms. Jackson. Knight v. United Farm Bureau Mutual Ins. Co., 950 F.2d 377, 378-79 (7th Cir. 1991). These factors include: "(1) the extent of the employer's control and supervision over the employee; [...] (3) the employer's responsibility for costs of the operation; (4) the method and form of payment and benefits; and (5) the length of the job commitment." Knight v. United Farm Bureau Mutual Ins. Co., 950 F.2d at 378-379.

6

The "contingent" status of Ms. Jackson didn't create a constructive employment relationship. Ms. Jackson worked on the premises of St. Paul's and worked with St. Paul's employees, but her superiors – those who could control and supervise her employment – were Unidine employees. <u>Knight v. United Farm Bureau Mutual Ins. Co.</u>, 950 F.2d at 703 ("the employer's right to control is the 'most important' consideration in ascertaining the existence of an employer-employee relationship."). From the summary judgment record, St. Paul's had no control or supervisory rights over Ms. Jackson. St. Paul's wasn't paying Ms. Jackson's paycheck or benefits, and wasn't in charge of her work schedule, hiring, or firing. Ms. Jackson was not in an employer-employee relationship with St. Paul's at the time of the alleged harassment. <u>Love v. JP Cullen & Sons, Inc.</u>, 779 F. 3d at 702-703

Ms. Jackson's own filings show that her employment with St. Paul's ended months before she alleges harassment in April 2017. Ms. Jackson hasn't pointed to evidence to the contrary to support her assertion that St. Paul's was her employer during the alleged harassment.

*B. Sex Discrimination*

Even if Ms. Jackson was in an employer-employee relationship with St. Paul's at the time of the alleged discrimination, Ms. Jackson hasn't provided sufficient evidence or facts to establish a *prima facie* case of sex discrimination under Title VII. Ms. Jackson can try to establish a *prima facie* case under the direct method

7

or indirect method. Coleman v. Donahoe, 667 F.3d 835, 845 (7th Cir. 2012); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under the direct method, Ms. Jackson must "must marshal sufficient evidence, either direct or circumstantial, that an adverse employment action was motivated by discriminatory animus." Porter v. City of Chicago, 700 F.3d 944, 954 (7th Cir. 2012); Coleman v. Donahoe, 667 F.3d 835, 845 (7th Cir. 2012) ("[u]nder the direct method, the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action") (internal quotations omitted). Under the indirect, or burden-shifting method, the plaintiff carries "the initial burden under the statute of establishing a *prima facie* case of . . . discrimination." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). This method requires the plaintiff to "demonstrate that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly-situated employees outside of his protected class more favorably." Stockett v. Muncie Indiana Transit System, 221 F.3d 997, 1001 (7th Cir. 2000). Since the direct method requires a showing of an "adverse employment action," analysis begins with the indirect method's analysis of adverse employment actions. Coleman v. Donahoe, 667 F.3d at 845.

Ms. Jackson belongs to a protected class. Ms. Jackson alleges that she was discriminated against because of her sex and race, which fits within 42 U.S.C. § 2000e. Being a member of a protected class is the first prong of the indirect

method. Stockett v. Muncie Indiana Transit System, 221 F.3d 997, 1001 (7th Cir. 2000). Little evidence has been provided to show that sufficient Ms. Jackson performed her job satisfactorily, but St. Paul's never fired her, nothing in the record suggests she was ever disciplined before this incident. Construing all evidence in favor of the plaintiff, Ms. Jackson's employment record fulfils the second prong of the indirect method. Stockett v. Muncie Indiana Transit System, 221 F.3d at 1001.

Ms. Jackson, however, hasn't pointed to sufficient evidence that she was subject to an adverse employment action. Stockett v. Muncie Indiana Transit System, 221 F.3d at 1001. She wasn't fired for reporting the incident, or for participating in the ensuring investigation. The comment made by her coworker, Keith Johnson, doesn't amount to an adverse employment action. Though a sexual comment isn't something hoped for from a coworker, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Moser v. Ind. Dep't of Corr., 406 F.3d 895, 903 (7th Cir. 2005).

Another way of looking at this is to consider whether the conduct was "sufficiently severe or pervasive" as to cause an adverse employment action. Harris v. Forklift Sys., 501 U.S. 17, 21 (1993); Cole v. Bd. of Trs., 838 F.3d 888, 895 (7th Cir. 2016). This is both a subjective and objective determination. Hilt-Dyson v. City of Chicago, 282 F.3d 456, 463 (7th Cir. 2002). The "severe or pervasive" standard is designed to prevent "simple teasing, offhand comments and isolated incidents" from being actionable under Title VII. Oncale v.

Sundowner Offshore Servs. Inc., 523 U.S. 75, 80 (1998). With no other allegations of inappropriate comments made by anyone at St. Paul's or Unidine towards Ms. Jackson, the conduct cannot be considered pervasive.

Lack of anything more than an isolated incident doesn't necessarily defeat Ms. Jackson allegations if the alleged conduct was sufficiently severe. Lapka v. Chertoff, 517 F.3d 974, 983-84 (7th Cir. 2008) ("We have held that assaults within the workplace create an objectively hostile work environment for an employee even when they were isolated."); Jackson v. County of Racine, 474 F.3d 493, 499 (7th Cir. 2007) ("[o]ne instance of conduct that is sufficiently severe may be enough"). Examples of sufficiently severe conduct include assault or the creation of environment in which the victim fears that such physical assault is imminent. Hostetler v. Quality Dining, Inc., 218 F.3d 798, 809 (7th Cir. 2000) (forcible kissing and attempts to remove clothing of coworker); Smith v. Sheahan, 189 F.3d 529, 532 (7th Cir. 1999) (physical assault); Porter v. Erie Foods Int'l, Inc., 576 F.3d 629, 636 (7th Cir. 2009) (the presence of multiple nooses caused the plaintiff to fear for his own safety and that of his family). Lesser conduct has not been found to support a claim of a hostile work environment. Johnson v. Gen. Bd. Of Pension & Health Benefits of the United Methodist Church, 733 F.3d 722, 729-30 (7th Cir. 2013) ("Showing [plaintiff] one video containing a momentary display of male nudity does not come close to reaching the required level of severity for a sexual harassment claim."); Cowan v. Prudential Ins. Co. of America, 141 F.3d 751, 757-758 (7th Cir. 1998) (sexual cartoon and depiction of a co-worker with a stripper did not rise to the requisite level of severity to support

a sexual harassment claim."). Ms. Jackson hasn't described conduct that rises to what the courts consider severe, a shortcoming that also stymies any effort under the direct method. Porter v. City of Chicago, 700 F.3d at 954; Coleman v. Donahoe, 667 F.3d at 845.

Finally, the summary judgment record doesn't allow an inference that St. Paul's treated similarly-situated employees outside of her protected class more favorably. Stockett v. Muncie Indiana Transit System, 221 F.3d at 1001. In fact, there is no evidence about how other employees were treated. Without such evidence, a showing can't be made that Ms. Jackson fared better or worse than similarly-situated employees that did not belong to her protected class.

## C. Race Discrimination

Ms. Jackson hasn't pointed to evidence or facts amounting a prima facie case of racial discrimination. Ms. Jackson has produced no evidence that she faced any harassment or discrimination based on her race. Ms. Jackson alleges neither an adverse employment action based on her race nor any disparate treatment in comparison to similar-situated employees outside of her protected class. Stockett v. Muncie Indiana Transit System, 221 F.3d at 1001. The summary judgment record doesn't support her conclusory claims or suggest that Ms. Jackson ever complained about racial harassment or discrimination during her employment period.

*D. Hostile Work Environment*

Ms. Jackson can't point to sufficient evidence or facts to establish a *prima facie* case of a hostile work environment under Title VII. Whether a work environment could be considered "hostile" depends on a "totality of the circumstances." Venters v. City of Delphi, 123 F.3d 956, 975 (7th Cir. 1997) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993)). Factors relevant to this analysis include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employees' work performance." Venters v. City of Delphi, 123 F.3d at 975; Porter v. City of Chicago, 700 F.3d at 956. The court must consider whether the alleged conduct was so "sufficiently severe or pervasive" as to cause a hostile work environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 67 (1986): Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 534 (7th Cir. 1993). The court already explained that Ms. Jackon's alleged sex discrimination was neither severe nor pervasive, and that Ms. Jackson hasn't presented evidence from which race discrimination might be inferred. She hasn't pointed to anything else to support her hostile work environment claim. Ms. Jackson offers at least three instances where her direct reports engaged in distracting and insubordinate behavior.[2]

---

[2] The alleged insubordinate incidents presented by Ms. Jackson, while supported by documentary evidence, remain unauthenticated and may constitute inadmissible hearsay. While the court is aware that Ms. Jackson is litigating pro se, she is still bound by the court's rules and procedures. Rangel v. Schmidt, 490 F. App'x 808, 810 (7th Cir. 2012).

These acts of insubordination, including eye rolling, interruption, lax meeting attendance, and poor work performance, don't rise to level of sufficiently pervasive. Porter v. City of Chicago, 700 F.3d at 956. Even long term animosity between employees doesn't rise to the level of sufficiently pervasive. Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir. 1998). These incidents of insubordination and animosity towards coworkers don't rise to the level of severity to sustain a hostile work environment claim. Porter v. City of Chicago, 700 F.3d at 956. Without more, the summary judgment record wouldn't allow a reasonable trier of fact to find that the environment in which Ms. Jackson worked hostile.

*E. Retaliation*

Ms. Jackson hasn't come forth with anything sufficient to establish a *prima facie* case of retaliation under Title VII. Her main allegation is that she was terminated from her employment for reporting the alleged harassing comment by Mr. Johnson. As with her discrimination claims, St. Paul's was not her employer at the time of her termination, and so can't be held liable for any alleged retaliation. Even if Ms. Jackson was in an employer-employee relationship with St. Paul's, the summary judgment record wouldn't support her claim. For Ms. Jackson to make out a *prima facie* case of retaliation under Title VII, she must show that: 1) she was engaged in a statutorily protected activity; 2) she suffered an adverse employment action; and 3) there was a causal connection between

her protected activity and the employment action. Rennie v. Dalton, 3 F.3d 1100, 1109 (7th Cir. 1993).

Ms. Jackson can't show that she has participated in statutorily protected activity. Ms. Jackson argues that reporting the alleged sexual comment resulted in her termination. Engaging in a strictly internal process like reporting workplace harrasement doesn't fall under the protected activity of 42 U.S.C. § 2000e-3. Even if one were to construe Ms. Jackson's reporting as an "investigation" under 42 U.S.C. § 2000e-3, the statute "doesn't include an investigation by the employer, as distinct from one by an official body authorized to enforce Title VII." Hatmaker v. Mem'l Med. Ctr., 619 F.3d 741, 747 (7th Cir. 2010) ("[a] purely internal investigation doesn't involve a "charge," or testimony, and neither is it a "proceeding" or a "hearing." To bring an internal investigation within the scope of the clause we would have to rewrite the statute."); Krause v. City of La Crosse, 246 F.3d 995, 1000 (7th Cir. 2000); but cf Abbott v. Crown Motor Co., 348 F.3d 537, 543 (6th Cir. 2003) (noting that when an employer receives a formal EEOC charge any internal investigation following the official charge should be treated as an official investigation).

Even if Ms. Jackson could be said to have engaged in statutorily protected activity, she hasn't provided adequate evidence to allow an inference that the reporting was causally connected to her termination. Ms. Jackson was repeatedly asked to return to work after the conclusion of the investigation. Ms. Jackson refused to do so, saying she felt that it was unsafe to return despite the fact that she and Mr. Johnson would no longer be working with each other.

"Opposition to perceived discrimination … does not serve as a license for the employee to neglect job duties." EEOC Enforcement Guidance on Retaliation and Related Issues (Aug. 29, 2016); Coutu v. Martin Cty. Bd. of Cty. Comm'rs, 47 F.3d 1068, 1074 (11th Cir. 1995). Ms. Jackson was terminated because she refused to engage in the basic functions that her job required, namely show up for work.

Nor could a reasonable factfinder decide on this record that Ms. Jackson's termination was pretextual. There is no set standard for showing pretext, but as a general rule, pretext can be inferred if: 1) the reason for firing was factually baseless; 2) the reason for firing wasn't the actual motivation for the employee's termination; or 3) the reason for termination was insufficient. See Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1996); Forrester v. Rauland-Borg Corp., 453 F.3d 416, 419 (7th Cir. 2006) ("if the stated reason, even if actually present to the mind of the employer, wasn't what induced him to take the challenged employment action, it was a pretext."). The stated reason for terminating Ms. Jackson's employment was her failure to show up for work despite repeated requests to do so. The summary judgment record doesn't support an inference that this stated reason was a pretext. Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1996).

CONCLUSION

For the foregoing reasons, the court GRANTS the defendants' motion for summary judgment [Doc. No. 75]. The court needn't reach St. Paul's arguments

about dismissal for failure to comply with the Federal Rules of Civil Procedure. Clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED:   December 18, 2018

/s/ Robert L. Miller, Jr.
Judge, United States District Court